# MERCANTILE BANK OF THE AMERICAS
## v.
# WEST PORTO RICO SUGAR COMPANY, INC., ET AL.

---

San Juan, Equity, No. 1071.

### TIME OF SALE OF SUGAR.

Contract—Damages.

Where a sugar producer and a bank have a contract that if sugars are not sold through the bank the producer shall make good the same commissions as if sold, and the producer held sugar for several months until the price went down and then sold it, upon suit by the bank, with no proof of protest by the bank, it will be held not to have proved its case and apparently to have acquiesced in the delay. The commissions will date as of the actual sale.

Opinion filed April 19, 1921.

Mercantile Bank v. West Porto Rico Sugar Co.

*Mr. H. G. Molina* for plaintiff.

*Mr. C. Coll y Cuchi* for defendants.

HAMILTON, Judge, delivered the following opinion:

The facts in this case present little difficulty inasmuch as they are covered by a stipulation supplemented by a short examination of witnesses. There is no question that there was due to the plaintiff by the defendants on January 22, 1921, the sum of at least $46,474. The only question is as to what is due in addition to this amount.

The claim arises from a contract between the West Porto Rico Sugar Company and the plaintiff, indorsed by the Bianchi defendants, whereby the bank loaned the West Porto Rico Sugar Company $600,000, available in certain instalments, the amount repayable out of sugar to be shipped to the bank, the bank to have a commission; interest and other matters being also provided for. On the sugar sold the bank was to retain $6 per bag, and as security the Sugar company, under the Agricultural Contract Law of Porto Rico, hypothecated all crops of sugar cane and products to be raised, manufactured, or growing upon properties of the company until the full payment of all sums due under the contract. The contract was for eighteen months and was registered. There is no question of the loan and of the repayment of the major part thereof. The case relates to what price of sugar the commissions were to be calculated on. Sugar in the early part of July was worth $16.50 per 100 pounds, and about that time the Sugar company pledged their remaining sugar to Sobrinos de Ezquiaga and to the Banco

Territorial, without requiring or requesting the consent of the plaintiff. Sugar thereafter went down in price and the defendants actually sold their sugar in November, 1920, at the price of $5.01 per 100 pounds, this also without requiring or requesting the consent of the plaintiff and without notifying the plaintiff of the said sale. Sugar was under the contract to be sold by the bank for the credit of the Sugar company, but it was provided (¶ 6) that "in the event that the Sugar company having secured the consent of the bank shall sell any portion of its sugar through other sources it shall nevertheless pay to the said bank the aforesaid commissions on the value of the sugar so sold, calculated upon the sales price of the said sugar derived from the sale at the place of sale."

The argument of the plaintiff is, that, as the facts show there were shipping facilities during June and July, and the defendants had on hand at that time, when the crop season ended, 13,775 bags of sugar, the commissions due should be calculated at the market price as of that time. The defendants claim on the other hand that the commissions should be calculated upon the actual selling price in November, which was less than one third of the July price.

There is no doubt that the contract by its terms allowed the defendants to sell the sugar, for themselves, provided they obtained the consent of the plaintiff and provided they paid the plaintiff the commissions in question. There was no such formal consent in the case at bar. The question in the case is whether this can be considered as waived.

If the plaintiff waived the terms of the contract, it cannot now set up that the contract was not carried out. As the defendants were doing business in Porto Rico and the plaintiff

was doing business in New York, the dealings between them must have been by mail or cable, and the plaintiff has not put the correspondence in evidence, nor is there anything in the stipulation as to the contents of the correspondence. It is shown that the defendants pledged their sugar to certain parties in Porto Rico without the consent of the plaintiff, but it is not stipulated that this was in any way opposed by the plaintiff. This contract was duly registered and was therefore brought to the attention of the plaintiff. The state of the sugar market must have been as well known to the plaintiff as to the defendant, if not even better known, inasmuch as the plaintiff was at New York, which was the seat of the market. It would look as if the plaintiff stood by and saw the defendants pledge the sugar and afterwards hold sugars without protest and without objection of any kind. Of necessity the result of this pledging was that much sugar was delivered to the pledgees and sold by them and could not be shipped to the plaintiff. Why this was done does not appear, but at least the burden is on the plaintiff to prove its case. Not having explained this delay and this apparent acquiescence in the intermediate pledging, the suspicion, if not conviction, arises in the mind that for some reason connected with the relations of the parties or state of the market the plaintiff acquiesced in the delay, and if so, cannot now contend that the sale should have been otherwise than as it actually was. At the least the plaintiff has not brought the conviction to the court that it was vigilant and did not acquiesce in the acts of the defendants. It may very well be that all parties acted in good faith, supposing that the market would recover, and if so the court must let the loss lie where it falls. It is not convinced that the plaintiff has made out its case.

Mercantile Bank v. West Porto Rico Sugar Co.

Accordingly the commissions in addition to the amount agreed upon are to be figured upon the actual sales in November. It is so ordered.